**E-FILED**
Tuesday, 29 April, 2014  12:52:50 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ARVEGENIX, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUDHIR SETH, *individually and as* | ) | |
| *agent of Pennycress Energy Company,* | ) | |
| *LLC, and Arvens Technology, Inc.,* | ) | |
| PENNYCRESS ENERGY COMPANY, | ) | |
| and ARVENS TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendants/Counter-Claimants, | ) | |
| | ) | |
| and | ) | Case No.   13-cv-1253 |
| | ) | |
| SUDHIR SETH, *individually and as* | ) | |
| *agent of Pennycress Energy Company,* | ) | |
| *LLC, and Arvens Technology, Inc.,* | ) | |
| PENNYCRESS ENERGY COMPANY, | ) | |
| and ARVENS TECHNOLOGY, INC., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIJAY CHAUHAN, DENNIS | ) | |
| PLUMMER, MICHAEL ROTH, | ) | |
| BIOGENERATOR, *a Missouri not-for-* | ) | |
| *profit corporation*, and BIOSTL, *a* | ) | |
| *Missouri not-for-profit corporation*, | ) | |
| | ) | |
| Third-Party Defendants, | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on two Motions to Dismiss (Docs. 77, 80), filed

by the Third-Party Defendants in this action, seeking to dismiss the claims brought

against them by Third-Party Plaintiffs for failure to state a claim upon which relief

can be granted. Third-Party Plaintiffs failed to respond to either Motion by the response deadlines. As a result, under Local Rule 7.1, the Court presumes there is no opposition to the Motions. The Court has also independently assured that Third-Party Defendants' grounds have merit. As explained below, both Motions are granted in part and denied in part.

## PROCEDURAL HISTORY

Plaintiff/Counter-Defendant Arvegenix, LLC ("Arvegenix") filed the present action on June 4, 2013, bringing multiple claims against Sudhir Seth ("Seth"), Pennycress Energy Company, LLC ("PEC"), and Arvens Technology, Inc. ("ATI"). (Doc. 1). On November 26, 2013, Seth, PEC, and ATI filed a pleading entitled "Counterclaim," which lists ten counts against Arvegenix and also names five Third-Party Defendants[1] in some or all of these claims: BioGenerator, BioSTL, Vijay Chauhan, Dennis Plummer, and Michael Roth. (Doc. 40). The present Motions concern only this latter pleading, and relate only to the third-party claims by Seth, PEC, and ATI, against BioGenerator, BioSTL, Chauhan, Plummer, and Roth. Accordingly, for purposes of this Order only, the Court will hereafter refer to Seth, PEC, and ATI collectively as Plaintiffs, and to BioGenerator, BioSTL, Chauhan,

---

[1] The Court questions the propriety of these parties being brought into this action in the first place. Seth, PEC, and ATI refer to these five additional parties as "Counter/Defendants" in the Counterclaim, but as the Court previously suggested, they are more appropriately considered third-party defendants. (Doc. 76 at 2); *see also Black's Law Dictionary* 1518 (8th ed. 2004) (defining third-party defendant). Federal Rule of Civil Procedure 14(a)(1) allows a defending party to bring into an action "a nonparty who is or may be liable to it for all or part of the claim against it." Seth, PEC, and ATI do not allege that Third-Party Defendants may be liable to them for all or part of the claims Arvegenix brought against them, and no other procedural basis is readily apparent. However, as no party briefed this issue, the Court will not analyze the matter in depth in this Order, but flags the issue for future consideration.

Plummer, and Roth collectively as Defendants, despite the third-party nature of the claims at issue.

On March 13, 2014, the Court dismissed Counterclaim X, exercising its discretion to decline to entertain the request for a declaratory judgment, because it was redundant of the other causes of action before the Court and did not serve the purposes of the Declaratory Judgment Act. (Doc. 76 at 9).[2] Accordingly, only nine claims in Plaintiffs' Counterclaim remain.

On March 18, 2014, BioGenerator and BioSTL (collectively, "Nonprofit Defendants") filed a Motion to Dismiss, seeking dismissal of all claims in the Counterclaim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for a more definite statement pursuant to Rule 12(e). Defendants Chauhan, Plummer, and Roth (collectively, "Individual Defendants") filed their Motion to Dismiss a few days later, joining the arguments of the Nonprofit Defendants and presenting some additional arguments for dismissal. These Motions are presently before the Court.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To

---

[2] The Court dismissed this claim on Arvegenix's Motion to Dismiss. However, the Court considered the claim as a whole, not just as it applied to Arvegenix. To the extent the previous Order was not clear, Counterclaim X is dismissed against all parties, not only against Arvegenix.

survive a motion to dismiss, the challenged pleading must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the [non-movant] has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

Under Federal Rule of Civil Procedure 12(e), a party may move for a more definite statement if the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response," and the party must "point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). Whether to grant such a motion is generally left to the discretion of the trial court. *Hummel v. Wells Petroleum Co.*, 111 F.2d 883, 886 (7th Cir. 1940).

## FACTUAL BACKGROUND[3]

Plaintiff Seth, as President and CEO of Plaintiffs ATI and PEC, is in the business of developing technology to make biofuel out of a plant called pennycress. He formed ATI and PEC to further that business. Since 2008, ATI and its predecessor entity had a series of research agreements with other organizations, including the United States Department of Agriculture and Western Illinois

---

[3] Unless otherwise noted, the Court draws the facts in this section from Plaintiffs' Counterclaim (Doc. 40), treating their allegations as true and drawing all reasonable inferences in their favor, in accordance with the motion to dismiss standard described above.

University, for various pennycress research undertakings, including possible commercial production.

In fall 2012, Seth, as an agent for ATI and PEC, approached Defendant BioGenerator in search of investment assistance to begin commercial production of pennycress for biofuel. BioGenerator, a subsidiary of BioSTL, is a company that "place[s] inventors and entrepreneurs with investors and technological experts in order to develop their business ideas." (Doc. 40 at 4). ATI and BioGenerator entered into a non-disclosure agreement ("NDA") on October 9, 2012, to facilitate their potential relationship and provide protection for any confidential information shared by Plaintiffs. The NDA provided that confidential information would not be disclosed to unapproved third parties or used for competitive purposes, and would be returned or destroyed at the conclusion of the business arrangement. This agreement is attached as an exhibit to the Counterclaim. (Doc. 40-6).

From fall 2012 to early 2013, Seth was introduced to Individual Defendants Vijay Chauhan, Dennis Plummer, and Michael Roth, as well as non-party Arnold Rosielle. BioGenerator represented that these individuals had knowledge and experience in start-up agribusiness, and that they were pursuing due diligence to determine whether Plaintiffs had a viable business idea. Plaintiffs provided access to information about the production of pennycress as well as business information and present and potential partners. During this time, Chauhan, Plummer, Roth, and Rosielle represented to Seth that they were meeting with potential investors. They also altered Seth's proposed business plans by reducing Seth's role in the proposed new business and his expected compensation.

5

By May 1, 2013, no agreement on the new business had yet been reached among the involved parties. Shortly thereafter, Individual Defendants, in collaboration with BioGenerator, formed a new company, Arvegenix, which was intended to compete with PEC and ATI. BioGenerator allegedly did not require its consultants to destroy or return Plaintiffs' confidential information that was disclosed pursuant to the NDA. In response to Plaintiffs' request for the return or destruction of all information provided to BioGenerator and the Individual Defendants, as BioGenerator consultants, BioGenerator advised they had received no confidential information. Arvegenix, as well as the Individual Defendants as Arvegenix's members, used the information and data provided by Plaintiffs to seek researchers and partners for their new company. They contacted Plaintiffs' collaborators in the pennycress industry in an attempt to persuade them to cancel agreements with Plaintiffs and to instead work with Arvegenix.

## DISCUSSION

Defendants seek dismissal of each of the nine remaining counts in Plaintiff's Counterclaim. Each count is addressed in turn, below, after a few preliminary matters are addressed.

### *Preliminary Matters*

First, throughout the Counterclaim, Plaintiffs make ample use of vague, conclusory statements, devoid of factual detail. For example, Plaintiffs repeatedly use the phrase "Counter/Defendants" in nearly every count, which applies collectively to the three Individual Defendants, the two Nonprofit Defendants, and Arvegenix. This does not afford adequate notice to each of the Defendants of the

claims against them or allow them to respond appropriately, and it detracts from the plausibility of Plaintiffs' claims.

Perhaps the most egregious example is the inclusion of BioSTL as a Defendant in every one of Plaintiffs' claims, despite the fact that the only two factual allegations specifically related to BioSTL in the entire pleading are (1) that BioGenerator is a subsidiary of BioSTL (Doc. 40 at 4), and (2) in the already-dismissed Count X, that BioSTL was required to prevent collaborators from using confidential information obtained pursuant to the NDA (Doc. 40 at 19). BioSTL was even named in several claims in which BioGenerator was not named as a Defendant, even though many of Plaintiffs' general factual allegations are targeted at BioGenerator. If BioSTL's status as a parent company to BioGenerator is the sole basis for BioSTL's liability, Plaintiffs should indicate as much, and BioSTL can then assess the legal soundness of such liability. Alternatively, if BioSTL is directly liable for its own actions, Plaintiffs must state what these actions were.

Defendants request, in the alternative to dismissal, a more definite statement under Rule 12(e). The primary defect and missing detail they point out is the failure to specify which Defendants are alleged to have been involved in which conduct. (Doc. 78 at 22). For the claims that are not dismissed, this alternative request for a more definite statement is granted. Plaintiffs must be more specific in repleading any of their dismissed third-party claims. The occasional grouping of multiple or all Defendants may be fine in some contexts, but the allegations must adequately indicate which Defendants are responsible for or liable for which conduct. Plaintiffs' amended pleading should provide sufficient detail as to the

conduct of specific parties and make more specific allegations that will allow Defendants to prepare a response.

Second, Defendants argue that several of Plaintiffs' claims, at least in part, are based on alleged theft of trade secrets, and that the claims are thus precluded by the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 to 1065/9. The ITSA provides that:

> (a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.
> (b) This Act does not affect:
>> (1) contractual remedies, whether or not based upon misappropriation of a trade secret . . . ;
>> (2) other civil remedies that are not based upon misappropriation of a trade secret; . . . .

765 Ill. Comp. Stat. 1065/8. This has been interpreted to mean that the ITSA is the "exclusive remedy under Illinois law for misappropriation of trade secrets." *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001).

There is limited Illinois case law on the full extent of this displacement, and the Illinois Supreme Court has yet to address it, but a recent Seventh Circuit case illuminates the issue. The court concluded that only claims that rest on the misappropriation of secret information are precluded; claims such as fraud or theft that "would be sound even if the [information] were a public record" are not precluded by the ITSA. *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005). The court also cited a comment from the Uniform Law Commissioner on the uniform act on which the ITSA is based, stating the displacement provision "does not apply to duties imposed by law that are not dependent upon the existence of

competitively significant secret information, like an agent's duty of loyalty to his or her principal." *Id.* at 405 (internal quotation marks omitted). Thus, to the extent Plaintiffs' claims are based on an alleged misappropriation of their secret information by Defendants, the claims are precluded and can only be brought under the ITSA. This limits the scope of some of Plaintiffs' counts, as addressed below when discussing the specific claims.

### Counts I and II

Defendants challenge Counts I and II of the Counterclaim, arguing these defamation claims are not actionable and are not adequately pleaded. Count I is a defamation per se claim, in which Plaintiffs allege Defendants publicly made false statements that (1) Seth was "not capable of being part of a management team of a startup company," (2) "investors would refuse to invest in a company in which Seth was part of the management team," and (3) "investors who had never met Seth stated that he was incapable of being on a management team of a startup company." (Doc. 40 at 10). They allege, on information and belief, that the statements were made to "third parties, including other customers, potential customers, capital investors, and other industry professionals." (Doc. 40 at 10). Count II, listed as "Damage Per Quod," which the Court interprets as a defamation per quod claim, adds that these false statements caused ATI and PEC to lose business opportunities, interfered with Seth's relationships with collaborators, and diminished the reputation of Plaintiffs. (Doc. 40 at 11).

In Illinois,[4] "[t]o state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). A defamation per se claim, as alleged in Count I, requires that the harm from the statement be obvious and apparent on its face, and must fall into one of five categories, including, as relevant for this litigation, words that "impute a person is unable to perform or lacks integrity in performing her or his employment duties" or that "impute a person lacks ability or otherwise prejudices that person in his or her profession." *Id.* Defamation per quod claims do not require statements to be in these categories, and allow for extrinsic evidence to show the harmful meaning of the statements. *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1221 (Ill. 1996).

Defendants first argue that the statements Plaintiffs allege were defamatory are statements of opinion, and thus not actionable. The First Amendment of the United States Constitution does not include a distinct privilege for all statements of opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-21 (1990).[5] Rather, a court

---

[4] The matter of choice of law for this defamation claim has not been briefed. Rather, Defendants assume that Illinois substantive law applies to all claims. Plaintiffs, having not responded to the Motions, do not weigh in on the matter. For purposes of this Order, the Court will accept Defendants' assumption that Illinois substantive law controls.

[5] Some of the Illinois cases that Defendants cite could be read to create a bright-line rule that statements of opinion cannot be the basis of defamation claims, but as the citations all relate to First Amendment restrictions on defamation law, these interpretations of constitutional restrictions are not binding authority; rather, the Court applies federal case law when interpreting the federal constitution. That is not to say the Illinois Supreme Court could not itself narrow Illinois defamation law to exclude statements of opinion as a matter of state law, not federal constitutional

10

must consider the statement more closely. Statements that are hyperbole, parody, or figurative, are generally protected. *Id.* at 16-17. If a speaker makes a statement that is plainly a subjective view or interpretation, "rather than claiming to be in possession of objectively verifiable facts," the First Amendment protects the speech and it is not subject to a defamation claim. *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 534 (7th Cir. 2009). Accordingly, even if phrased as an opinion, a statement is not constitutionally protected from defamation claims if it implies an assertion of fact, such that the statement can reasonably be interpreted as "stating actual facts." *Milkovich*, 497 U.S. at 20; *see also Giant Screen Sports*, 553 F.3d at 533 ("The First Amendment also affords protection from liability to a speaker expressing an opinion that does not misstate actual facts.").

The first alleged defamatory statement, that Seth was "not capable of being part of a management team of a startup company," seems to be an opinion that cannot be objectively verified, and does not imply an assertion of fact or that the speaker possessed objective facts. This statement is similar to one in *Sullivan v. Conway*, 157 F.3d 1092 (7th Cir. 1998). In *Sullivan*, the statement that the plaintiff was "a very poor lawyer," in contrast with specific factual statements about his work or integrity, was not actionable because it is "so difficult to verify or refute that it cannot feasibly be made a subject of inquiry by a jury." *Id.* at 1097. Similarly, here, Defendants were stating a general opinion that Seth was incapable of being part of a startup management team, without asserting or implying any facts in

law, but that does not appear to have happened in this context. *See Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1021-22 (Ill. 2008).

support. This statement is not subject to a defamation claim under First Amendment jurisprudence.

The second statement, that "investors would refuse to invest in a company in which Seth was part of the management team," suffers a similar fate. This statement too is simply an opinion that cannot be verified. It is phrased in the future tense, aiding an understanding that no factual basis is implied but that it is simply the opinion of the speaker. Thus, this statement is also protected by the First Amendment and cannot be the subject of Plaintiffs' defamation claims.

The third alleged statement, on the other hand, does assert objectively verifiable fact. A statement that "investors who had never met Seth stated that he was incapable of being on a management team of a startup company," by purporting to relate a statement made by someone else that may or may not have actually been made, can reasonably be interpreted as stating a fact. The truth or falsity of whether any investors made such statements could potentially be verified. Accordingly, this alleged statement alone can be the basis of Plaintiffs' defamation claims, as it is not constitutionally protected, and the Court turns to Defendants' other arguments against the defamation claims.

Defendants' second argument against Plaintiffs' defamation claims is that Plaintiffs failed to "meet Illinois' particularity requirement" for defamation per se claims in Count I. (Doc. 78 at 7). Although Illinois law has a heightened factual pleading requirement for defamation cases, federal courts apply federal notice pleading requirements, not state pleading requirements. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). This means the ordinary notice

1:13-cv-01253-JBM-JEH   # 83   Page 13 of 26

pleading standards, requiring a plausible claim that gives fair notice, is all that Plaintiffs must satisfy. *See, e.g.*, *Concentra Health Servs., Inc.*, 496 F.3d at 776. A complaint that does not provide any context for the statement does not state a plausible claim for relief, and does not give adequate notice of the claim. *See McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1017 (N.D. Ill. 2012).

In Count I, Plaintiffs allege that all of the Defendants made the false statements, specified the false statements, and asserted, on information and belief, that the statements were made to "third parties, including other customers, potential customers, capital investors, and other industry professionals." (Doc. 40 at 10). The only key information missing is when the statements were made and in what form, but this information can be inferred from the general factual allegations incorporated in this claim, which indicate the statements were made while Defendants were contacting entities in the pennycress biofuel industry to solicit business for Arvegenix. (*See* Doc. 40 at 8-9). Accordingly, Count I satisfies federal pleading standards, though only barely.

Finally, Defendants' third argument is that Plaintiffs failed to plead special damages in Count II. (Doc. 78 at 8-9). To plead a defamation per quod claim, a plaintiff must state his special damages. *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009). Again, federal pleading standards apply, so the standard is that set forth in Federal Rule of Civil Procedure 9(g), not in Illinois case law. *See Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613-14 (7th Cir. 2013). Accordingly, Plaintiffs' special damages "must be specifically stated." Fed. R. Civ. P. 9(g). This

means the "pleadings must demonstrate some actual pecuniary loss." *Action Repair, Inc. v. Am. Broad. Cos., Inc.*, 776 F.2d 143, 150 (7th Cir. 1985).

In Count II, Plaintiffs' only allegation relating to monetary damages is that the false statements "caused ATI and PEC to lose potential collaboration with various individuals and entities that would be able to provide venture capital for the commercial production of pennycress through ATI and PEC." (Doc. 40 at 11). This does not give any indication of what the special damages from the statements might be, and does not demonstrate any actual pecuniary loss. Thus, Count II must be dismissed for failure to specifically state the special damages required to maintain a defamation per quod claim.

To summarize, of the defamation claims raised in Counts I and II, the only claim that remains is Count I, and only insofar as it relates to the third alleged defamatory statement, that "investors who had never met Seth stated that he was incapable of being on a management team of a startup company."

### Counts III and IV

In Count III, Plaintiffs bring a claim of tortious interference with business relationships, and Count IV is a tortious interference with business expectancies claim. Both are stated as against all Defendants.

As a preliminary matter, it is not clear that these are separate causes of action; rather, it appears Counts III and IV bring the same cause of action, just using different words for it. *See, e.g.*, *River Park, Inc. v. City of Highland Park*, 667 N.E.2d 499, 507 (Ill. App. Ct. 1996) (listing the elements of a tortious interference claim, which includes both business relationships and expectancies). There does

14

appear to be a separate tort in Illinois for intentionally interfering with a contract. *See, e.g.*, *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877-78 (Ill. 1991) (distinguishing between a claim for interfering with existing contracts and a claim for interfering with prospective economic advantages or expectancies). However, Plaintiffs do not allege that Defendants actually interfered with any contracts, even if they allegedly tried, so that cannot be the claim Plaintiffs bring. This Court will leave for another day the question of whether there is truly any distinction between Counts III and IV, and for purposes of this Order treats them as separate claims with virtually identical elements. If Plaintiffs replead these claims, they must ensure they have a good faith basis for listing them as separate counts.

The elements of tortious interference with business relationships or expectancies claims are: (1) a reasonable business expectancy or the reasonable expectation of a continued valid business relationship; (2) the defendants knew of the relationship or expectancy; (3) the defendants intentionally interfered with the relationship or expectancy, causing it to fail to ripen as expected; and (4) damage to plaintiff. *See id.*; *River Park*, 667 N.E.2d at 507. Here, Plaintiffs have only pleaded the bare elements of the claim, without any specific factual allegations in support. Simply alleging that defendants interfered with the relationship or expectancy does not adequately state a claim, as that is merely a legal conclusion. *See Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011). There are insufficient factual allegations to indicate which of Plaintiffs' business relationships and expectancies are specifically involved. Further, it is unclear how any alleged interference caused Plaintiffs' expectancies to be unfulfilled. Without this key information, Plaintiffs

have failed to state a plausible claim for relief. Accordingly, Counts III and IV must be dismissed.

To guide any future repleading of these claims, the Court notes Defendants' additional argument against them, that they are precluded by the ITSA. However, Counts III and IV are not necessarily premised on any secret information, and would be viable even if the information Plaintiffs alleges Defendants used had been public information. Thus, the Court sees no basis for the tortious interference claims to be displaced by the ITSA.

***Count V***

Count V is a Lanham Act unfair competition claim based on alleged false or misleading statements in connection with goods or services, creating liability pursuant to 15 U.S.C. § 1125(a)(1). Defendants raise numerous deficiencies with this claim.

The most obvious initial problem with a claim under 15 U.S.C. § 1125(a)(1)(B),[6] which is the false advertising prong of the provision, is that there are no allegations of any commercial advertising undertaken by Defendants. Commercial advertisement is a required element of a false advertising claim. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). Advertisement is a specific subset of commercial speech, which involves "promotion to anonymous recipients." *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001). Plaintiffs offer no suggestion that the statements at issue fell within

---

[6] Plaintiffs quote all of subsection (a)(1) in paragraph 55 of the Counterclaim, even though the subsection recites two conceptually different claims. Though not clear that Plaintiffs intend to bring their claim under the false advertising prong, the Court analyzes it for purposes of thoroughness.

the scope of advertisement or promotion. To the extent Plaintiffs intend to bring a false advertising claim, the claim fails and is dismissed.

Further, a required element for a claim pursuant to the other prong of the subsection, § 1125(a)(1)(A), is that the false or misleading statement must be "likely to cause confusion, or to cause mistake." 15 U.S.C. § 1125(a)(1)(A). The only allegation relating to this element is that false statements "caused confusion with university and federal governmental collaborators of Seth, PEC and ATI." (Doc. 40 at 13). This is simply a bare recital of the element, and does not state a plausible basis for the claim. Plaintiffs must allege a sufficient factual basis to state a plausible claim for relief, which they have failed to do. Accordingly, Count V must be dismissed.[7]

### Count VI

Count VI alleges unfair competition under Illinois common law. Defendants raise two primary problems with this claim. First, they argue that this claim is "little more than a reiteration of [Plaintiffs'] other claims," and suffers from the same flaws. (Doc. 78 at 14). Second, they note the claim also appears to be based on alleged theft and misuse of trade secrets, which is preempted by ITSA.

---

[7] There are numerous other, more substantive deficiencies with this claim, as well, that the Court need not address given the clear failure to state a claim for lack of pleadings related to confusion or mistake. For example, it is not clear that statements to potential investors are the type of statements intended to be covered by the Lanham Act. *See Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("Consumers rather than producers are the objects of the [unfair competition] law's solicitude."); *Hot Wax*, 191 F.3d at 819-20 (referring to statements to consumers or customers). It is also unclear whether the solicitation of investments or grants comes within the qualification in § 1125(a)(1) that the representation must be "in connection with any goods or services." *See, e.g.*, *Leis v. Davidson*, 955 F. Supp. 2d 821, 825 (N.D. Ill. 2013) (concluding that false statements to potential investors do not fall under Lanham Act).

It appears the tort of unfair competition in Illinois is largely an amalgamation of several other similar claims. One Illinois court referred to unfair competition as a "broad spectrum of law." *Duo-Tint Bulb & Battery Co. v. Moline Supply Co.*, 360 N.E.2d 798, 801 (Ill. App. Ct. 1977). Although seemingly a broad tort, there are no Illinois cases reciting the elements of an unfair competition claim. *See Custom Bus. Sys., Inc. v. Boise Cascade Corp.*, 385 N.E.2d 942, 944 (Ill. App. Ct. 1979). As one federal district court noted, the form of unfair competition that relates to interfering with relationships with others, like Plaintiffs' Count VI, "apparently falls under the rubric of tortious interference with prospective economic advantage." *Zenith Elecs. Corp. v. Exzec, Inc.*, 93 C 5041, 1997 WL 798907, at *14 (N.D. Ill. Dec. 24, 1997) (citing *Soderlund Bros. v. Carrier Corp.,* 663 N.E.2d 1, 8–10 (Ill. App. Ct. 1995); *Corroon & Black of Ill., Inc. v. Magner,* 494 N.E.2d 785, 794 (Ill. App. Ct. 1986)), *aff'd*, 182 F.3d 1340 (Fed. Cir. 1999).

Here, Plaintiffs have alleged no cause of action in Count VI distinct from their other claims, and have thus failed to state a claim upon which relief can be granted. As the court in *Zenith Electronics* concluded, this Court also concludes that this claim is really a tortious interference claim, which is raised in Counts III and IV. Plaintiffs have not shown that this is a distinct cause of action, and Illinois cases suggest, at least based on facts such as these, that is not. *See Soderlund Bros.*, 663 N.E.2d at 8-10. As a matter of law, this claim fails, as it is simply a reiteration of Plaintiffs' tortious interference claims.

Additionally, Plaintiffs' allegations in this claim almost exclusively relate to confidential information that was allegedly misappropriated by Defendants. As

discussed above, the ITSA precludes common law claims based on such conduct. Accordingly, this affords another basis for the dismissal of this claim, as it is displaced by the ITSA. Count VI is thus dismissed with prejudice on these substantive bases.

### Count VII

In Count VII, Plaintiffs allege a common law claim of unjust enrichment. A claim for unjust enrichment requires allegations "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). The defendant's wrongful conduct can be based, for example, on fraud or on implied contract. *Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. Ct. 2012). The doctrine does not apply if there is an express contract that governs the relationship of the parties. *Id.*; *see also People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992); *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977).

Here, Plaintiffs allege that Defendants were unjustly enriched because they received the benefit of information from Plaintiffs without compensating Plaintiffs for that valuable information. As stated, Plaintiffs allege that they provided valuable research and business information to Defendants without an agreement that they would receive any compensation, but without pleading any basis for why this enrichment is unjust. It is unclear whether this claim is premised on fraud by Defendants, or an implied contract, or some other basis to find wrongful conduct. In

fact, Plaintiffs fail to allege any wrongful conduct by Defendants, other than to state generally that retention of the information "violates fundamental principles of justice, equity, and good conscience." (Doc. 40 at 15). As such, the claim is inadequately stated and must be dismissed.

For purposes of facilitating any future repleading decisions, the Court notes three further hurdles. First, Plaintiffs' pleadings in the Counterclaim, as well as the NDA attached as an exhibit to the Counterclaim (Doc. 40-6), demonstrate that the relationship between Plaintiffs and at least BioGenerator was governed by a contract.[8] Plaintiffs also seemingly allege in other parts of the Counterclaim that the contract governs the relationship between Plaintiffs and the other Defendants insofar as it relates to the dissemination of information about ATI and the pennycress industry.[9] Therefore, Plaintiffs' unjust enrichment claim may fail as a matter of law as to some or all parties because of the NDA.

Second, it appears Plaintiffs, by incorporating the paragraphs of Count VI relating to unfair competition and alleging deception, may intend to base their unjust enrichment claim on fraudulent acts by Defendants. If Plaintiffs do intend fraud to be a basis for unjust enrichment, they should keep in mind the heightened pleading requirements in Rule 9(b) for allegations of fraud. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447-48 (7th Cir. 2011).

---

[8] BioGenerator was not named as a Defendant in this claim, so perhaps Plaintiffs realized this limitation.

[9] However, Plaintiffs could plead this claim in the alternative, in the event the Court finds the relationship between Plaintiffs and the remaining Defendants were not governed by this contract. *See Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 705 (Ill. App. Ct. 2005).

Finally, as this claim is alleged, it appears to be squarely foreclosed by the ITSA. The allegations relate only to Defendants' taking and using Plaintiffs' prennycress research and industry information, which Plaintiffs allege throughout the Counterclaim was confidential information. Accordingly, this claim may be precluded by the ITSA.

### Count VIII

Plaintiffs bring Count VIII pursuant to the Illinois Deceptive Trade Practices Act, specifying four deceptive trade practices from the provision that they apparently allege Defendants violated. 815 Ill. Comp. Stat. 510/2(a)(3), (5), (8), and (12).

As it relates to BioSTL specifically, Plaintiffs do not state sufficient factual allegations against it in this claim.[10] The only allegation that could be read to include BioSTL, because it refers collectively to all of the Defendants, is insufficient to state a claim against BioSTL. (Doc. 40 at 16). The paragraph goes to only one of the elements, alleging three false representations, and does not address damages or harm to Plaintiffs—the paragraph in Count VIII that does address damages refers only to the misconduct of Arvegenix and the Individual Defendants, not BioSTL. Thus, the claim is dismissed as against BioSTL.

Defendants also argue that because this claim and the Lanham Act claim have the same factual basis, this claim too must be dismissed. (Doc. 78 at 17; Doc. 81 at 5). However, Plaintiffs allege more detail in this count than in Count V. Simply because the other count was dismissed for failing to state a claim does not

---

[10] BioGenerator is also not named as a Defendant in this claim at all.

require that Count VIII, stated with more specificity, also be dismissed. The Individual Defendants have not given adequate reason for dismissal of this claim, and the Court finds that Count VIII gives sufficient notice of the claim against them. Plaintiffs allege the Individual Defendants made false or misleading statements, disparaged Plaintiffs, and made specific false representations of their expertise, access to seed stock, and customer list. That coupled with the harm to Plaintiffs sets forth an adequate claim under the Illinois Deceptive Trade Practices Act. Aside from the collective references to Defendants, which should be changed by Plaintiffs in their amended pleading, Defendants have sufficient notice of the factual basis for Plaintiffs' claim, and it is supported by sufficient factual allegations to raise the claim to a plausible level. Though a far cry from a model pleading, Count VIII suffices to state a claim against the Individual Defendants.

### Count IX

Finally, Count IX alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2. The elements of a claim under this act are "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). This claim is clearly inadequately stated, as the three allegations are only very generic and vague allegations that Defendants "engaged in unfair methods of competition and/or unfair or deceptive acts," that this caused "consumer confusion in the agriculture and biofuels community," and that Plaintiffs suffered "substantial damages." (Doc.

40 at 17). Plaintiffs do not even allege that Defendants' intended Plaintiffs to rely on the deception, and it is unlikely, given the general facts alleged elsewhere in the Counterclaim, that they can do so. Although Defendants again use Illinois pleading standards to make their argument, they are still ultimately correct that Plaintiffs have inadequately pleaded this claim. There are simply no factual allegations in support of this claim with any level of detail. Plaintiffs fail to state a claim in Count IX, and it must be dismissed.

There is a further problem with Count IX that the Court notes in the event Plaintiffs attempt to replead this claim: The ICFA does not appear to apply to the facts of this case as alleged. The ICFA is "intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). Although competitors may bring a claim under the Act, there must still be a relationship to consumer protection or must involve practices directed toward the general market. *See, e.g.*, *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999); *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996); *Lake Cnty. Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1115 (Ill. App. Ct. 1995). There is no indication of any consumer protection concerns in this case. Plaintiffs have not alleged, and it cannot be inferred from the facts alleged, that any of the entities allegedly subject to false information by Defendants are consumers. Unless Plaintiffs can show there are consumer protection issues that relate to the allegations, they cannot replead this claim.

As it is entirely unclear what the factual basis is for this claim, the Court also notes that in the event it is based on the misappropriation of confidential information, this claim would also be precluded by the ITSA.

***Summary***

Counts I and II are dismissed with prejudice regarding the first and second alleged defamatory statements, that Seth was "not capable of being part of a management team of a startup company," and that "investors would refuse to invest in a company in which Seth was part of the management team." These statements cannot be reasonably interpreted to assert facts, so cannot be the subject of defamation claims. Count I remains only insofar as it relates to the third alleged defamatory statement, that "investors who had never met Seth stated that he was incapable of being on a management team of a startup company." Count II, to the extent it proceeds on the basis of this same statement, is dismissed without prejudice for failure to specifically state special damages.

Counts III, IV, V, VII, and IX are dismissed without prejudice. Count VIII is also dismissed without prejudice, but only as to Defendant BioSTL. Count VI is dismissed with prejudice, as the unfair competition claim based on facts such as Plaintiffs allege either is not a separate claim from Counts III and IV under Illinois law, or is precluded by the ITSA.

For the few remaining claims, Defendants' request for a more definite statement is granted. Plaintiffs must file an amended pleading within twenty-one days of the date of this Order that provides more detail as to the specific Defendants involved in each claim. In the amended pleading, all dismissed claims must either

be omitted or repleaded in a manner consistent with this Order. If Plaintiffs fail to file an amended pleading within this time, the dismissal of all dismissed claims against Defendants will be final for purposes of this case, and any claims that were not dismissed will be stricken pursuant to Rule 12(e).

Importantly, Arvegenix did not move to dismiss Counts I-IX of the Cournterclaim. As noted above, Arvegenix previously filed a motion to dismiss Count X, which was granted, and it also filed an Answer to the remaining counterclaims stated against it. Accordingly, Counts I-IX are not dismissed as to Arvegenix. However, because of the flaws addressed in this Order, and because Plaintiffs are already being ordered to file an amended counterclaim pleading to remove or replead all dismissed claims, Plaintiffs would be wise to take heed of the flaws and fix them with respect to Arvegenix, as well. If Plaintiffs choose to leave in any of the flawed claims simply because they were not dismissed against Arvegenix, the Court invites Arvegenix to file a motion for judgment on the pleadings to challenge these inadequate claims.

## CONCLUSION

IT IS THEREFORE ORDERED that Motion to Dismiss (Doc. 77) by Third-Party Defendants BioSTL and BioGenerator is GRANTED IN PART AND DENIED IN PART, and Motion to Dismiss (Doc. 80) by Third-Party Defendants Vijay Chauhan, Dennis Plummer, and Michael Roth is GRANTED IN PART AND DENIED IN PART. Counts II, III, IV, V, VII, and IX are DISMISSED WITHOUT PREJUDICE. Count VIII is also DISMISSED WITHOUT PREJUDICE as to Third-Party Defendant BioSTL only. Count VI is DISMISSED WITH PREJUDICE. For all

remaining claims, Defendants' request for a more definite statement is GRANTED. Third-Party Plaintiffs SHALL file an amended pleading within twenty-one days of the date of this Order.


Entered this <u>29th</u> day of April, 2014.


s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
